AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California



FILED
SEP 11 2019
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. **19MJ3893**
)
One Apple iPhone Xs )
Model MT8W2LL/A )
Serial #G0NX8PRKKPFR )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference

located in the    Southern    District of    California    , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-2, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952, 960 | Importation of Methamphetamine |

The application is based on these facts:

See attached Affidavit of Special Agent Cesar Valdivia, Homeland Security Investigations

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

S.A. Cesar Valdivia, Homeland Security Investigations
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/11/19

*Judge's signature*

City and state: San Diego, CA         Hon. Jill L. Burkhardt United States Magistrate Judge
*Printed name and title*

# Attachment A-2

## *Item to be Searched*

The items to be searched are as follows:

> Apple iPhone Xs
> Model MT8W2LL/A
> Serial #G0NX8PRKKPFR
> (**Target Device 2**)

**Target Device 2** is currently in the possession of the Department of Homeland Security and are presently stored at 880 Front Street, Suite 3200, San Diego, CA 92101.

## Attachment B-2

### *Items to be Seized*

Authorization to search the cellular/mobile telephones and tablet described in Attachment A-2 ("**Target Device 2**") includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephones and tablet for evidence described below. The seizure and search of the cellular/mobile telephones and tablet shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephones and tablet will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, from May 25, 2019 up to and including August 25, 2019:

  h. tending to indicate efforts to import cocaine or some other federally controlled substance from Mexico into the United States;

  i. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of cocaine or some other federally controlled substance from Mexico into the United States;

  j. tending to identify co-conspirators, criminal associates, or others involved in importation of cocaine or some other federally controlled substance from Mexico into the United States;

  k. tending to identify travel to or presence at locations involved in the importation of cocaine or some other federally controlled substance from Mexico into the United States;

  l. tending to identify the movement of proceeds associated with the trafficking of cocaine or some other federally controlled substance that was imported from Mexico into the United States;

1

*Affidavit in Support of Search Warrants*

m.     tending to identify the user of, or persons with control over or access to, **Target Device 2**; and/or

n.     tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

**which are evidence of violations of Title 21, United States Code, Sections 952 and 960.**

*Affidavit in Support of Search Warrants*



## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Cesar Valdivia, having been duly sworn, do hereby state that the following is true to my knowledge and belief:

### INTRODUCTION

1. I make this affidavit in support of applications for warrants to search the following electronic devices, as further described in Attachments A-1, A-2, and A-3 (collectively, the "**Target Devices**"), and seize evidence of violations of federal law, namely 21 U.S.C. §§ 952 and 960, as further described in Attachments B-1, B-2, and B-3:

> Apple iPhone
> Model A1778
> FCC ID:8CG-E3091A
> IC: 579C-E3091A
> ("**Target Device 1**"); and
>
> Apple iPhone Xs
> Model MT8W2LL/A
> Serial #G0NX8PRKKPFR
> ("**Target Device 2**"); and
>
> Samsung Galaxy Model SM-J3371
> IMEI: 352149/10/023218/9
> S/N: RF8KA1MG32K
> ("**Target Device 3**")

This search supports an investigation and prosecution of Henri OCAMPO ("OCAMPO") and Jasmine ZAMORA ("ZAMORA"), who are presently charged with committing violations of 21 U.S.C. §§ 952 and 960. A factual explanation supporting probable cause follows.

2. Officers with the Department of Homeland Security, United States Customs and Border Protection ("CBP"), seized the **Target Devices** from OCAMPO and ZAMORA on August 24, 2019 incident to their arrest at the Otay Mesa, Port of Entry ("POE") for drug smuggling, in violation of 21 U.S.C. §§ 952 and 960. OCAMPO claimed ownership of **Target Devices 1 & 3** and stated **Target Device 2** belongs to ZAMORA. The **Target**

**Devices** are currently in the possession of the Department of Homeland Security and are presently stored at 880 Front Street, Suite 3200, San Diego, California 92101.

3. Based on the information below, there is probable cause to believe that a search of the **Target Devices** will produce evidence of the aforementioned crimes, as more particularly described in Attachments B-1, B-2, and B-3 (incorporated herein by reference).

4. Because this affidavit is being submitted for the limited purpose of establishing probable cause to obtain search warrants, it does not contain all of the information known to investigators about this investigation. It contains only those facts believed to be necessary to establish probable cause. In addition, information contained in this affidavit is based upon reviews of official reports and records, conversations with other investigators experienced in the area of drug investigations, and my personal observations and knowledge. When the contents of documents or statements of others are reported herein, they are reported in substance and in part unless otherwise indicated. Dates and times are approximate.

## TRAINING AND EXPERIENCE

5. I am a "law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. I am a Special Agent with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"). I have been employed in my current position with HSI since August of 2008. I am currently assigned to the Office of the Special Agent in Charge, San Diego, California ("SAC/SD"). I also work as an HSI Drug Duty Agent assigned at the San Ysidro, Otay Mesa and Tecate Ports of Entry (POE). As a Drug Duty Agent, I am responsible for investigating any crime involving the smuggling/trafficking of narcotics that is intercepted at the POE. The nature of my work with HSI requires that I keep apprised of recent trends and developments involved in the investigations of narcotics traffickers, and I regularly communicate with agents from the Drug Enforcement Administration, United States

2

*Affidavit in Support of Search Warrants*

Border Patrol, Customs and Border Protection, and various other local and state law enforcement officers operating within the Southern District of California. I am cross-designated and have the authority to conduct Title 21 investigations and enforcement activities.

6. Prior to working with HSI, I was employed as a CBP Officer with the DHS, from 2004 to 2008.

7. My formal education includes a Bachelor of Science Degree in Criminal Justice from San Diego State University. I have also received criminal investigator training, including twenty-six weeks at the Federal Law Enforcement Training Center.

8. I have worked and consulted with numerous agents and other law enforcement officers who have investigated drug distribution and trafficking throughout the United States. I have conducted investigations and/or participated in investigations related to the unlawful importation and distribution of controlled substances as well as the laundering of monetary instruments involving the proceeds of specified unlawful activities associated with criminal drug offenses. From my training, experience, and knowledge of this investigation, I have become familiar with the techniques and methods used by large Mexico-based illegal drug trafficking organizations to smuggle, transport, and distribute illegal drugs, as well as methods used to collect, smuggle, and launder illegal drug proceeds.

9. Through the course of my training, investigations and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, and tablets, to maintain communications with co-conspirators in order to further their criminal activities. Conspiracies involving narcotics smuggling generate many types of evidence including, but not limited to, evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messages, emails, instant messages, social networking messages, maps and directions, and phone numbers of co-conspirators.

*Affidavit in Support of Search Warrants*

10. Based upon my training and experience as an HSI Special Agent, and my consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I further submit the following:

   a. Drug traffickers use cellular telephones because the devices are mobile and provide instant access to telephone calls, texts, internet, application-based communications platforms (*e.g.*, WhatsApp), and voice messages;

   b. Drug traffickers use cellular telephones because they are able to actively monitor the progress of the illegal cargo while the conveyance is in transit;

   c. Drug traffickers and their accomplices use cellular telephones because the phones help them arrange for the delivery of cargo at predetermined locations and monitor / plan for arrival times;

   d. Drug traffickers use cellular telephones to direct couriers to synchronize drop off and pick up times of the illegal cargo;

   e. Drug traffickers use cellular telephones to notify or warn accomplices about law-enforcement activity, such as the presence and posture of marked and perceived unmarked patrol vehicles, or the operational status of border checkpoints and border crossings; and

   f. The use of cellular telephones by traffickers tends to generate evidence stored on the cellular telephones, including but not limited to emails, text messages, application-based communications, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

11. Subscriber Identity Module ("SIM") Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal

4

*Affidavit in Support of Search Warrants*

security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

12. Tablets, which are also mobile devices, have many, if not all, of the same features as cellular telephones, and so are attractive to drug-trafficking organizations for the same reasons that cellular telephones are. Tablets too are mobile and provide instant access to texts, internet, application-based communications platforms (*e.g.*, WhatsApp), and, for many models, telephone calls and voice messages.

## FACTS IN SUPPORT OF PROBABLE CAUSE

13. On August 24, 2019, at approximately 5:35 p.m., OCAMPO and ZAMORA applied for permission to enter into the United States from Mexico through the Otay Mesa, California POE in a 2018 white Infiniti Q50 (the "Vehicle"). CBPO Casillas conducted the primary inspection of OCAMPO and ZAMORA. CBPO Casillas asked OCAMPO and ZAMORA if they had anything to declare from Mexico, and OCAMPO declared a case of beer. OCAMPO stated their destination in the United States was Anaheim, California. CBPO Casillas observed that the Vehicle was the subject of a computer-generated alert and proceeded to refer the vehicle to secondary inspection.

14. In the secondary inspection lot, CBP CEO Ronquillo conducted a canine inspection on the Vehicle, and the canine alerted to the rear of the vehicle. In secondary inspection, CBPO S. Bertagna conducted a Z-Portal X-ray of the Vehicle and observed anomalies in the rear quarter panels of the Vehicle.

15. CBPO Harris then conducted a secondary inspection of the vehicle. During the inspection, CBP Officer Harris discovered a total of 20 plastic-wrapped packages within the rear quarter panels of the Vehicle. CBPO Harris field-tested one of the packages, and it field-tested positive for methamphetamine. The combined weight of the packages was approximately 10.34 kilograms (22.79 pounds). CBPO Harris informed OCAMPO and ZAMORA that they were being placed under arrest for transporting narcotics into the United States and seized the Vehicle, methamphetamine, and **Target Devices**.

5

*Affidavit in Support of Search Warrants*

16. I read OCAMPO his *Miranda* rights and he elected to give a statement. OCAMPO denied knowledge of the drugs in the Vehicle. OCAMPO further stated that the Vehicle belongs to him but is registered to ZAMORA's sister, Cynthia Ayala. OCAMPO stated that he does not have Ayala's phone number, but Ayala's phone number is in ZAMORA's phone. OCAMPO further stated that he had two cell phones in his possession, an iPhone with a cell phone number of (714) 561-2719 (**Target Device 1**), and a Samsung with phone number (714) 366-6836 (**Target Device 3**). OCAMPO stated **Target Device 2** belongs to ZAMORA.

17. On August 26, 2019, I was discussing the facts of this case with SA Bethany Watrous and determined that Cynthia Ayala—ZAMORA's sister and the registered owner of the Vehicle—attempted to smuggle methamphetamine and cocaine through the San Ysidro POE earlier on the day of OCAMPO and ZAMORA's arrest: August 24, 2019. Ayala entered the San Ysidro POE on August 24, 2019 at approximately 8:10 a.m. and was later charged with importation of methamphetamine and cocaine in the Southern District of California in Case No. 19-MJ-03605-AGS. The vehicle driven by Ayala contained 101 packages, weighing approximately 50.16 kilograms (110.58 pounds) that tested positive for methamphetamine, and 1 package, weighing 1.12 kilograms (2.46 pounds) that tested positive for cocaine. Ayala waived her rights under *Miranda* and admitted that she believed she was smuggling marijuana into the United States. Ayala stated that she was driving the narcotics to Santa Ana, California and was going to wait for a phone call for further instructions. At the end of her post-arrest statement, at approximately 4:57 p.m., SA Bethany Watrous allowed Ayala to make a phone call; Ayala called her sister, ZAMORA, but her sister's boyfriend, OCAMPO answered. ZAMORA and OCAMPO were arrested at the Otay Mesa POE in Ayala's vehicle approximately 35 minutes later.

18. On August 26, 2019, OCAMPO and ZAMORA were charged in a complaint with Importation of Methamphetamine, in violation of 21 U.S.C. §§ 952, 960 in the Southern District of California, Case No. 19-MJ-03605-AGS.

19. Based upon my experience investigating drug smuggling, my training, and my

6

*Affidavit in Support of Search Warrants*

consultation with other investigators who have experience investigating drug smuggling in near the border, I understand that drug smugglers will seek to smuggle drugs from Mexico to the United States by hiding the drugs in hidden compartments of cars, and in non-factory compartments (*i.e.*, compartments that the manufacturer did not design for ordinary use). Smugglers will then drive north from Mexico and seek to pass through POEs with the drugs undetected. (I am also aware that such individuals will sometimes try to generate a history of crossings to show that driving through a POE is ordinary behavior for them.) When they arrive in the United States, smugglers will take the drugs to a discreet location to transfer them to other people involved in the distribution chain, who can then send the drugs to other locations for downstream distribution.

20. Given the facts surrounding the arrest of OCAMPO and ZAMORA, and based upon my experience and training, as well as consultation with other law enforcement officers experienced in drug smuggling investigations, I submit that there is probable cause to believe that information relevant to the smuggling activities of OCAMPO and ZAMORA will be found in the **Target Devices**. Such evidence, which could be in the form of communications, records, data (including but not limited to emails, text messages, other social messaging applications), photographs, audio files, videos, or location data:

    a. tending to indicate efforts to import cocaine or some other federally controlled substance from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of cocaine or some other federally controlled substance from Mexico into the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in importation of cocaine or some other federally controlled substance from Mexico into the United States;

    d. tending to identify travel to or presence at locations involved in the importation of cocaine or some other federally controlled substance

7

*Affidavit in Support of Search Warrants*

from Mexico into the United States;

e. tending to identify the movement of proceeds associated with the trafficking of cocaine or some other federally controlled substance that was imported from Mexico into the United States;

f. tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

g. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

21. Finally, I note that drug conspiracies generally entail detailed and intricate planning as part of efforts to evade detection by law enforcement. In my professional training and experience, I am aware that this requires planning and coordination in the days and weeks (and often months) prior to the relevant drug-related event. Additionally, I am aware that co-conspirators are often unaware of a subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo, particularly in the hours following the arrest. Therefore, I believe that the appropriate date range for the search of the **Target Devices** is from May 2019 up to and including August 25, 2019 (*i.e.*, the day after the events described in this affidavit).

## METHODOLOGY

22. It is not possible to determine, merely by knowing a cellular telephone's or tablet's make, model and serial number, the nature and types of services to which the devices are subscribed and the nature of the data stored on the devices. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their devices—both phones and tablets—over the internet and remotely destroy all of the data contained on the devices. For that reason, the devices may

8

*Affidavit in Support of Search Warrants*

only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones and tablets do not have hard drives or hard-drive equivalents and store information in volatile memory within the devices or in memory cards inserted into the devices. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models, and some tablets, using forensic hardware and software. Even if some of the stored information on the devices may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

23. Following the issuance of this warrant, I will collect the **Target Devices** and subject them to analysis. All forensic analysis of the data contained within the **Target Devices** and any associated memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

24. Based on the foregoing, identifying and extracting data subject to seizure pursuant to these warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

25. Law enforcement has not yet attempted to obtain the evidence sought by this warrant.

## CONCLUSION

26. Based on all of the facts and circumstances described above, I believe probable cause exists to conclude that OCAMPO and ZAMORA used the **Target Devices** to facilitate the offense of drug smuggling and to communicate with co-conspirators. The **Target**

9

*Affidavit in Support of Search Warrants*

**Devices** were likely used to facilitate the offense by transmitting and storing data, which constitutes evidence of violations of Title 21, United States Code, Sections 952 and 960.

27. Because the **Target Devices** was promptly seized following the arrest of OCAMPO and ZAMORA at the Otay Mesa POE, there is probable cause to believe that evidence of the smuggling offense committed by them continues to exist on the **Target Devices**. As stated above, I believe that the date range for this search is from May 25, 2019, up to and including August 25, 2019.

28. WHEREFORE, I request that the court issue a warrant authorizing HSI Special Agents and/or other federal and state law enforcement officers specially trained in digital evidence recovery, to search the **Target Devices**, as described in Attachments A-2, A-2, and A-3, and seize the items listed in Attachments B-1, B-2, and B-3, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

CESAR VALDIVIA
Homeland Security Investigations Special Agent
Department of Homeland Security

Subscribed and sworn to before me on this 11 day of September, 2019.

HON. JILL L. BURKHARDT
United States Magistrate Judge

10

*Affidavit in Support of Search Warrants*